# EXHIBIT A-2

9/18/2025 9:39 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 105808032
By: Iris Collins
Filed: 9/18/2025 9:39 PM

CAUSE NO. _____

| | | |
|---|---|---|
| JANE & JOHN DOE, individually, and as parents and next friends of A. DOE, a minor | § § § § | |
| | § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs*, | § | **HARRIS COUNTY, TEXAS** |
| | § | **_____ JUDICIAL DISTRICT** |
| v. | § § | |
| **BAYLOR COLLEGE OF MEDICINE.** | § § | |
| *Defendants.* | § § | |

## PLAINTIFFS' ORIGINAL PETITION

This case arises from Baylor College of Medicine's neglect to take adequate measures to safeguard vulnerable patients from an intentional privacy violation by one of its residents. This lawsuit is necessary because a doctor—who was always acting within the course and scope of his residency with Baylor Medical School—stole children's private medical information and published it through national media. The Plaintiffs in this case include A. Doe, one of the children whose private medical information was leaked by Baylor College of Medicine's resident, Dr. Ethan Haim, and their parents, Jane and John Doe. Defendants actions and negligence have endangered the Plaintiffs and caused them immense mental anguish and distress.

Plaintiffs Jane & John Doe, individually, and as parent and next friend of A. Doe[1] (collectively, "Plaintiffs") by and through undersigned counsel, hereby file this Original Petition

---

[1] Plaintiffs proceed pseudonymously in order to protect their right to privacy, particularly the privacy of A. Doe, who is a minor. The Texas Rules of Civil Procedure recognize the need to protect minors' identities. *See* Tex. R. Civ. P. 21c(a)(3). Such a goal would not be possible if the identities of the Does were public. Moreover, the disclosure of the Plaintiffs' identities would reveal matters of a highly sensitive and personal nature, specifically A. Doe's transgender status and [their] diagnosed medical condition—gender dysphoria. *Foster v. Andersen*, No. 18-2552-

Certified Document Number: 122712424 - Page 1 of 21

against Baylor College of Medicine ("<u>Defendant BCM</u>" or "<u>BCM</u>"). In support of their Petition, Plaintiffs respectfully show this Court as follows:

<h1 align="center">I.   RELIEF SOUGHT AND DISCOVERY LEVEL</h1>

1.     Plaintiffs intend to conduct discovery under Level Three pursuant to Texas Rule of Civil Procedure 190.4 and affirmatively plead that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiffs seek monetary and other relief over $100,000.

<h1 align="center">II.   PARTIES</h1>

2.     Plaintiffs Jane and John Doe bring this suit individually and as parents and next friends of A. Doe, a minor. A. Doe is transgender youth who has been diagnosed with gender dysphoria and was undergoing legal, appropriate, evidence-based medical care for treatment of her gender dysphoria at Texas Children's Hospital until May of 2023. Jane, John, and A. Doe were all residents of Harris County, Texas, at the time of the events in this Petition; they are now residents of Los Angeles County, California.

3.     Defendant Baylor College of Medicine is a private medical school based in Houston, Texas, that employed Dr. Haim via its residency program at the time of the events in this Petition. Defendant has its principal office in Harris County, Texas, and may be served via its

---

DDC-KGG, 2019 WL 329548, at *2 (D. Kan. Jan. 25, 2019). "[O]ther courts have recognized the highly personal and sensitive nature of a person's transgender status and thus have permitted transgender litigants to proceed under pseudonym." *Id.* (collecting cases); *see also Abbott v. Doe*, No. 03-22-00126-CV, 2022 WL 837956, at *1 (Tex. App.—Austin Mar. 21, 2022) (mandamus conditionally granted sub nom.), *In re Abbott*, 645 S.W.3d 276 (Tex. 2022) (allowing plaintiffs, a transgender minor and her parents, to proceed pseudonymously at all times throughout litigation to protect the family's privacy). Furthermore, as courts have recognized, the disclosure of a person's transgender status "exposes them to prejudice, discrimination, distress, harassment, and violence." *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 332 (D.P.R. 2018); *see also Foster*, 2019 WL 329548, at *2.

<strong>PLAINTIFFS' ORIGINAL PETITION – PAGE 2</strong>

Certified Document Number: 122712424 - Page 2 of 21

registered    agent:    James    Banfield,    One    Baylor    Plaza,    Suite    M730

Houston, TX 77030 USA , or wherever it may be found.

### III.    JURISDICTION AND VENUE

4.    The subject matter in controversy is within the jurisdictional limits of this Court,

and the Court has jurisdiction over this action pursuant to TEX. OCC. CODE § 159.009, TEX. GOV'T

CODE § 24.007, and TEX. CONST. ART. 5, § 8.

5.    Venue is proper in Harris County, Texas, because Defendant BCM has its principal

office in Harris County, TEX. CIV. PRAC. & REM. CODE § 15.002(A)(3), and the Plaintiffs resided

in Harris County at the time of the initial harm, TEX. OCC. CODE § 159.009, TEX. HEALTH &

SAFETY CODE § 611.005.

6.    Pursuant to Tex. R. Civ. P. 47(c), Plaintiffs seek monetary relief over $250,000 but

not more than $1,000,000.

### IV.    FACTUAL BACKGROUND

**A.**    **A. Doe's confidential medical records were stolen from Texas Children's Hospital by**
**Dr. Haim and publicly released.**

7.    On May 16, 2023, illegally obtained copies of multiple transgender children's

confidential health information were published to the world on social media and elsewhere on the

internet. The "leak" of this confidential health information came from Texas Children's Hospital

("TCH"), where A. Doe had been receiving comprehensive care. The information was stolen by a

BCM Resident, Dr. Eithan Haim, who had accessed the patients' medical records even after his

rotation at TCH had ceased.

8.    Dr. Haim gave the stolen information to precisely the people whose use of it would

cause the greatest possible injury to Plaintiffs and the other patients similarly in their position. Dr.

Haim sent it to individuals and groups who politically oppose transgender healthcare, who

Certified Document Number: 122712424 - Page 3 of 21

characterize medically appropriate, evidence-based, and industry-standard treatment for gender dysphoria as child abuse, and who publicly vilify parents who allow their transgender children to receive such care.

9.      While the care obtained and provided to the Plaintiffs has been approved and sanctioned by every major medical and psychological association and is in accordance with best medical care practices, anti-trans individuals and groups like those to whom Dr. Haim leaked A. Doe's information nonetheless target and attack families who need and receive this care, and employ unethical and hateful tactics to do so.

10.     Dr. Haim is not a "whistleblower," as a "whistleblower" is someone who reveals malfeasance, corruption, or violations of the law. No law was broken, and the care provided was medically necessary according to the applicable standards of care, and desired and consented to by all parties. Dr. Haim violated medical ethics, the standard of care for protecting patient privacy, and the laws protecting  the privacy of people who were not even his own patients on the basis of his personal disagreement with their legal medical choices.

11.     Jane and John Doe are not ashamed that they provided (and still seek to provide, albeit in another state) the care their child needed, consistent with the best medical science available, but in the climate of anti-transgender sentiment that people like Dr. Haim have helped to create, the widespread publication by Defendant's agent Dr. Haim of Plaintiffs' family medical choices has been and continues to be both terrifying and dangerous.

12.      Dr. Haim's actions were calculated to create and have created reputational, professional, and mental health harm to Plaintiffs. The leaking of confidential information, including confidential medical information, related to various transgender kids and their families

Certified Document Number: 122712424 - Page 4 of 21

was devastating and created immense risk, not the least of which is to the physical safety of the children and their families.

13.    On or about May 16, 2023, Jane and John Doe learned through friends and through media reports that medical records of transgender patients at TCH, including the records of their child, A. Doe, had been given to a blogger and activist working with the Manhattan Institute.

14.    These patient records include patient names, ages, diagnoses, treatments, appointment dates and exact times, referring physician, procedure details, and even room numbers.

15.     The blogger made copies of these patient records available for anyone to download from his own website. These copies "redacted" the names, dates of birth, photos, and medical record numbers with a haphazard red marker-type electronic covering, but disclosed the patients' ages; genders; diagnoses; appointment dates, times, and room numbers; treatment and procedure notes and details; providers and referring provider names. Even with the redactions, the remaining details create a strong possibility that a person sufficiently interested in determining the identities of the patients or their parents could do so.

16.    Dr. Haim himself had no need to access the records under relevant privacy laws. Yet Dr. Haim, the blogger, and anyone else with whom Dr. Haim may have shared the records have access to unredacted copies of the records.

17.    The blogger linked these patient records in publications on multiple websites, across multiple social media platforms, and sent links to email subscribers. He also included screenshots of the semi-redacted records on numerous social media posts and in a YouTube video that have collectively been viewed more than two million times as of the date of this filing. Per Dr. Haim and the blogger's public statement, over 8 million people viewed the article linking the records.

PLAINTIFFS' ORIGINAL PETITION – PAGE 5

18.    Dr. Haim was a resident in BCM's general surgery residency program from 2018 until he graduated on June 23, 2023. Rotations through this residency program include public hospitals Ben Taub Hospital and Michael E. DeBakey VA Medical Center, and private hospitals Baylor St. Luke's Medical Center, The University of Texas MD Anderson Cancer Center, and Texas Children's Hospital.

19.    Dr. Haim worked at TCH during his residency, but, on information and belief, he was no longer working at TCH when he accessed, downloaded, and released A. Doe's medical records. He never had a treating relationship with A. Doe.

20.    Dr. Haim provided patient records to the blogger with the intent that the blogger publish those records and/or the information contained therein. In January 2023, Dr. Haim, according to his own public statements, began what would be a five-month-long campaign of reaching out to numerous media outlets and public figures who he believed opposed gender affirming healthcare and would be interested in publishing the information he had. Jane and John Doe do not know to how many of these outlets and individuals Dr. Haim sent their child's medical records. While Dr. Haim has repeatedly stated in interviews that the records were semi-redacted when *published*, he has never indicated that they were semi-redacted when he was shopping them around in search of a publisher. In any case, Dr. Haim had, and likely still has, access to fully unredacted copies of the records.

21.    It is currently unknown exactly how much information Dr. Haim provided to the blogger, the Manhattan Institute, other prospective publishers, or their associated publications or political allies beyond what has already been published on their websites and social media platforms.

22.     It is currently unknown whether Dr. Haim provided A. Doe's personal health information to additional recipients, or who else may have access to this information. On information and belief, Dr. Haim shared the information broadly in his campaign to harm Plaintiffs.

23.     Since the public release of confidential medical information about A. Doe, Plaintiffs have been living in fear. Plaintiffs have since made the decision to flee their home and the state of Texas in significant part due to the increased threat to their child's safety created by the unauthorized disclosure of their confidential medical information by BCM's resident, Dr. Haim.

24.     The trauma this theft and publication has inflicted on Plaintiffs cannot be overstated. The Plaintiffs have faced increased anxiety, depression, and insomnia since learning of the leak. The ability to trust healthcare providers and institutions has been lost. In the words of Jane Doe: "We will never feel safe walking into a doctor's office again. We will always worry if someone who has access to our child's private records will try and do her harm."

25.     The breach of their child's medical privacy has left the Doe family with an overwhelming sense of fear, vulnerability, and betrayal. Because of the safety concerns they now face, Jane and John Doe decided to leave their livelihoods in Texas to relocate to another state. The Doe family scrambled to sell their home, find new jobs, and find a new place to live while living in fear of harassment or violence from hostile actors who have an unknown amount of private information about their family.

**B.      Defendant BCM breached its legal duties owed to Plaintiffs.**

26.     On information and belief, Defendant BCM failed to adequately and thoroughly investigate its residents before hiring them.

27.     On information and belief, Defendant BCM failed to take appropriate action—such as dismissal from the general surgery program—when it learned of the actions and intentions of its resident, Dr. Haim.

28.     On information and belief, Defendant BCM failed to adequately supervise its resident, Dr. Haim.

29.     On information and belief, Defendant BCM knew or should have known about Dr. Haim's plan and intent to willfully violate Plaintiff's privacy.

30.     Despite Dr. Haim's egregious and unethical conduct during his general surgery residency, he was allowed to finish his residency with BCM in June 2023.

### V.     CAUSES OF ACTION

### COUNT ONE:
### Unauthorized Release of Confidential Information
### pursuant to TEX. OCC. CODE § 159.009

31.     Plaintiffs incorporate each of the foregoing paragraphs as if they were fully set forth herein.

32.     Under TEX. OCC. CODE § 159.002(a)–(b), communications between a physician and a patient, relative to or in connection with any professional services as a physician to the patient, including any record created or maintained by a physician of the identity, diagnosis, evaluation, or treatment of a patient by a physician, are confidential and privileged and may not be disclosed.

33.     Dr. Haim was acting within the course and scope of his BCM residency at the time of the events in this Petition.

34.     Defendant BCM is liable for the actions of its resident, Dr. Haim, which proximately caused the unauthorized disclosure of A. Doe's personal medical information and caused the Plaintiffs to suffer the resulting harm. These breaches collectively constitute the

Certified Document Number: 122712424 - Page 8 of 21

unauthorized release of confidential and privileged communications in violation of TEX. OCC. CODE § 159.

35.    Plaintiffs are therefore entitled to recover damages under TEX. OCC. CODE § 159.009.

## COUNT TWO:
## Negligent Hiring

36.    Plaintiffs incorporate each of the foregoing paragraphs as if they were fully set forth herein.

37.    In addition, or alternatively, Plaintiffs bring a claim for negligent hiring.

38.    Dr. Haim was acting within the course and scope of his BCM residency at the time of the events in this Petition.

39.    Defendant BCM owed Plaintiffs a legal duty to adequately and thoroughly investigate its residents prior to hiring them.

40.    Defendant BCM breached this duty, and such breach was a proximate cause of Plaintiffs' injuries and damages as set forth above.

41.    Plaintiffs' injuries and damages were a foreseeable outcome of negligent hiring.

## COUNT THREE:
## Negligent Retention

42.    Plaintiffs incorporate each of the foregoing paragraphs as if they were fully set forth herein.

43.    In addition, or alternatively, Plaintiffs bring a claim for negligent retention.

44.    Dr. Haim was acting within the course and scope of his BCM residency at the time of the events in this Petition.

Certified Document Number: 122712424 - Page 9 of 21

45.     Defendant BCM owed Plaintiffs a legal duty to discharge or reassign residents whose actions since hiring have demonstrated that they are unfit for their role, or whom BCM knew or should have known intended to violate patients' rights.

46.     Defendant BCM breached this duty when it retained its resident, Dr. Haim, both after it knew or should have known of his scheme and or that he posed a risk of committing such a violation, and even after he leaked A. Doe's medical records.

47.     Defendant BCM's breach proximately caused Plaintiffs' injuries and damages as set forth above.

48.     Plaintiffs' injuries and damages were a foreseeable outcome of negligent retention.

## COUNT FOUR:
### Negligent Supervision and Enforcement

49.     Plaintiffs incorporate each of the foregoing paragraphs as if they were fully set forth herein.

50.     In addition, or alternatively, Plaintiffs bring a claim for negligent supervision and enforcement.

51.     Dr. Haim was acting within the course and scope of his BCM residency at the time of the events in this Petition.

52.     Defendant BCM owed a legal duty to Plaintiffs to exercise that degree of care and diligence exercised by other providers in the same or similar circumstances with respect to the supervision of its residents, enforcement of policies and procedures, and compliance with State and Federal privacy laws.

53.     Defendant BCM breached this duty when it failed to supervise its resident, Dr. Haim, and enforce its policies in such a way that would protect the private, sensitive health information and medical records of patients.

**PLAINTIFFS' ORIGINAL PETITION – PAGE 10**

54.     Defendant BCM's negligent supervision and enforcement were a proximate cause of Plaintiffs' damages as set forth above.

55.     Plaintiffs' injuries and damages were a foreseeable outcome of negligent supervision and enforcement.

## VI.    PUNITIVE DAMAGES

56.     Defendants acted with gross indifference to the rights of Plaintiffs. Plaintiffs therefore seek exemplary or punitive damages in an amount of more than $250,000 but not more than $1,000,000.

## VII.    CONDITIONS PRECEDENT

57.     All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

58.     To the extent that Plaintiff's claims are construed to be "health care liability claim[s]" within the meaning of Texas Civil Practice and Remedies Code Sec. 74.001(13), the Notice required by Sec. 74.051 was delivered on September 18, 2025, and is attached as Exhibit A. Plaintiffs reserve the right to amend this Petition after the 60 day period of that Section has elapsed.

59.     Because the Parties' tolling agreements expired on September 17, 2025, to the extent that Plaintiff's claims are not construed to be "health care liability claim[s]" subject to the tolling provisions of Sec. 74.061(c), the statute of limitations would elapse during the 60-day notice period. Out of an abundance of caution Plaintiffs therefore assert those claims at this time.

## VIII.   REQUEST FOR DISCLOSURE

60.    Pursuant to Texas Rule of Civil Procedure 194, Plaintiffs request that Defendants disclose, within fifty (50) days of the service of this request, all of the information or material described in Rule 194.2 (a)-(l).

## IX.    JURY DEMAND

61.    Plaintiffs demand a jury trial and tender the appropriate fee.

## X.    REQUEST FOR RELIEF

For the reasons set forth above, Plaintiffs request the following:

(A)    Judgment against Defendants for Plaintiffs' damages as set forth above, including actual, special, and punitive damages;

(B)    Prejudgment interest at the maximum rate allowed by law until the date judgment is entered herein;

(C)    Post-judgment interest at the maximum rate allowed by law on any judgment from the date judgment is entered until paid;

(D)    Attorneys' fees

(E)    All costs incurred in this lawsuit; and

(F)    Any such other relief, at law or in equity, to which this Court deems Plaintiffs are justly entitled.

DATED: September 18, 2025

Respectfully submitted,

By: */s/ Holt Lackey*
    Holt M. Lackey
    Texas Bar No. 24047763
    holt@holtmajorlackey.com

Certified Document Number: 122712424 - Page 12 of 21

Amaris Isabel Diaz
Texas Bar No.24144444
amaris@holtmajorlackey.com
**HOLT MAJOR LACKEY, PLLC**
111 W. Anderson Ln., Ste. D-211
Austin, Texas 78752
512-949-9598

**ATTORNEYS FOR PLAINTIFFS**

**PLAINTIFFS' ORIGINAL PETITION – PAGE 13**

Exhibit A

Certified Document Number: 122712424 - Page 14 of 21

# Holt Major Lackey, PLLC

111 W. Anderson Lane, Suite D211, Austin TX 78752
holt@holtmajorlackey.com (512) 949-9598

September 18, 2025

Danielle Herring
Littler Mendelson P.C.
1301 McKinney St., Ste. 1900
Houston, TX 77010-3031
***Via Certified Mail and E-Mail***

**RE: Texas CPRC § 74.051 Notice of Claim**

Dear Ms. Herring,

Pursuant to Texas Civil Practice & Remedies Code § 74.051, this letter serves as written notice of a potential health care liability claim[1] asserted by my clients Jane and John Doe, individually and on behalf of A. Doe, a minor (the "Does")[2] against your client Baylor College of Medicine ("BCM").

As detailed at more length in my April 23, 2025, letter to BCM's General Counsel Robert F. Corrigan, Jr., and subsequent correspondence and discussion with yourself and other attorneys for BCM, the Does' claims arise out of the improper release of A. Doe's personal medical data by Dr. Ethan Haim in or around May 2023, while he was a resident at BCM. Among other potential statutory and tort claims, Dr. Haim's actions in making this unlawful disclosure departed from accepted standards of care and implicates Texas Occupations Code § 159.009.

The authorization form for release of protected health information as required under Texas Civil Practice & Remedies Code § 74.052 is attached.

Sincerely,

Holt M. Lackey
Attorney at Law
Holt Major Lackey, PLLC

---

[1] Whether the Doe's claims are "health care liability claims" within the meaning of the CPRC is a debatable question of law and the Does reserve their right to assert other claims and to assert their claims as claims other than "health care liability claims." This letter is not intended to limit the scope of the Does' potential claims nor to concede that those claims are "health care liability claims," but is sent out of an abundance of caution to ensure that all procedural prerequisites are met to the extent that any of their claims are ultimately determined to be "health care liability claims."

[2] The Does' real names are known to yourself and BCM and are in the attached Authorization Form. They are the same parties who entered the May 14, 2025, Confidential Tolling Agreement and its subsequent amendments with BCM (as amended, the "Tolling Agreement"). As you know, under Section 8 of the Tolling Agreement the parties agreed to an ongoing and surviving agreement to keep the Does' Identities in connection with the Claims confidential. If you have any doubt about the Does' Identities I would be happy to communicate them confidentially to you.

1

Certified Document Number: 122712424 - Page 15 of 21

AUTHORIZATION FORM FOR RELEASE OF PROTECTED HEALTH INFORMATION

Patient Name: ███████████ ...............................

Patient Date of Birth: ███████ ..........................................

Patient Address: ████████████████ ...........

Street................................          City, State, ZIP

Patient Telephone: ███████████ ...........................

Patient E-mail: ████████████ ................

NOTICE TO PHYSICIAN OR HEALTH CARE PROVIDER: THIS AUTHORIZATION FORM HAS BEEN AUTHORIZED BY THE TEXAS LEGISLATURE PURSUANT TO SECTION 74.052, CIVIL PRACTICE AND REMEDIES CODE. YOU ARE REQUIRED TO PROVIDE THE MEDICAL AND BILLING RECORDS AS REQUESTED IN THIS AUTHORIZATION.

A. I, ██████ (name of patient or authorized representative), hereby authorize _BCM_____ (name of physician or other health care provider to whom the notice of health care claim is directed) to obtain and disclose (within the parameters set out below) the protected health information and associated billing records described below for the following specific purposes (check all that apply):

[ɔ] To facilitate the investigation and evaluation of the health care claim described in the accompanying Notice of Health Care Claim.

[ ] Defense of any litigation arising out of the claim made the basis of the accompanying Notice of Health Care Claim.

[ ] Other--Specify:_____

B. The health information to be obtained, used, or disclosed extends to and includes the verbal as well as written and electronic and is specifically described as follows:

1. The health information and billing records in the custody of the physicians or health care providers who have examined, evaluated, or treated ████████ (patient) in connection with the injuries alleged to have been sustained in connection with the claim asserted in ████████ ing Notice of Health Care Claim.

Names and current addresses of treating physicians or health care providers:

███████████████

███████████████

███████████████

███████████████

███████████████

███████████████

███████████████

███████████████

█████████ (patient) for injuries alleged in connection with the claim made the basis of the attached Notice of Health Care █████████ if the claimant gives notice to the recipient of the attached Notice of Health Care Claim of that additional physician or health care provider:

2. The health information and ████████ (patient) during a period commencing five years prior to the incident made the basis of the accompanying ████████ Care Claim.

Names and current addresses of treating physicians or health care providers, if applicable:

███████████████

███████████████

███████████████

███████████████

███████████████

███████████████

██████████

8._____

C. Exclusions

   1. Providers excluded from authorization.

█████████████████████████████████████████████████████████
████████ (patient) to whom this authorization does not apply because I contend ████████
                                                               or health care
provider to whom this authorization does not extend and the inclusive dates of examination, evaluation, or treatment to be
withheld from disclosure, or state "none":

████████████████████

████████████████████

████████████████████

████████████████████

████████████████████

████████████████████

████████████████████

███████████████ __

   2. By initialing below, the patient or patient's personal or legal representative excludes the following information from this
authorization:

██████████████████████████

██████████████████████████

████████████████████████████████████████

████████████████████████████

D. The persons or class of persons to whom the patient's health information and billing records will be disclosed or who will
make use of said information are:

   1. Any and all physicians or health care providers providing care or treatment to  (patient);

2. Any liability insurance entity providing liability insurance coverage or defense to any ████████████████ ███████████████████████████████████ _ (patient);

3. Any consulting or testifying experts employed by or on behalf of BCM_____ (name of physician or health care provider to whom Notice of Health Care Claim has been given) with regard to the matter set out in the Notice of Health Care Claim accompanying this authorization;

4. Any attorneys (including secretarial, clerical, experts, or paralegal staff) employed by or on behalf of BCM_____ (name of physician or health care provider to whom Notice of Health Care Claim has been given) with regard to the matter set out in the Notice of Health Care Claim accompanying this authorization;

██████████████████ r facts relating to any suit filed seeking damages arising out of the medical care or treatment of

E. This authorization shall expire upon resolution of the claim asserted or at the conclusion of any litigation instituted in connection with the subject matter of the Notice of Health Care Claim accompanying this authorization, whichever occurs sooner.

F. I understand that, without exception, I have the right to revoke this authorization at any time by giving notice in writing to the person or persons named in Section B above of my intent to revoke this authorization. I understand that prior actions taken in reliance on this authorization by a person that had permission to access my protected health information will not be affected. I further understand the consequence of any such revocation as set out in Section 74.052, Civil Practice and Remedies Code.

G. I understand that the signing of this authorization is not a condition for continued treatment, payment, enrollment, or eligibility for health plan benefits.

H. I understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and may no longer be protected by federal HIPAA privacy regulations.

Name of Patient

███████████████

Signature of Patient/Personal or Legal Representative

███████████████████

Description of Personal or Legal Representative's Authority

Parent_____

Date

9/18/25

Certified Document Number: 122712424 - Page 20 of 21

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Holt Lackey on behalf of Holt  Lackey
Bar No. 24047763
holt@holtmajorlackey.com
Envelope ID: 105808032
Filing Code Description: Petition
Filing Description:
Status as of 9/19/2025 9:18 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amaris Diaz | | amaris@holtmajorlackey.com | 9/18/2025 9:39:33 PM | SENT |
| Amaris Diaz | | amaris@holtmajorlackey.com | 9/18/2025 9:39:33 PM | SENT |
| Amaris Diaz | | amaris@holtmajorlackey.com | 9/18/2025 9:39:33 PM | SENT |
| Holt Lackey | | holt@holtmajorlackey.com | 9/18/2025 9:39:33 PM | SENT |
| Holt Lackey | | holt@holtmajorlackey.com | 9/18/2025 9:39:33 PM | SENT |
| Holt Lackey | | holt@holtmajorlackey.com | 9/18/2025 9:39:33 PM | SENT |
| Matthew Pyle | 24123135 | mpyle@littler.com | 9/18/2025 9:39:33 PM | SENT |
| Danielle Herring | 24041281 | dherring@littler.com | 9/18/2025 9:39:33 PM | SENT |

Certified Document Number: 122712424 - Page 21 of 21



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   September 22, 2025

Certified Document Number:        122712424 Total Pages:  21

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**