IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JANE AND JOHN DOE, INDIVIDUALLY AND §
AS PARENTS AND NEXT FRIENDS OF A. §
DOE, A MINOR, §
§
  *Plaintiffs*, §
VS. §    CIVIL ACTION NO. 4:25-CV-04482
§
BAYLOR COLLEGE OF MEDICINE, §
§
  *Defendant*. §

## ORDER

Pending before this Court is Defendant Baylor College of Medicine's ("BCM") Motion to Dismiss (Doc. No. 9). Plaintiffs Jane and John Doe, individually, and as parents and next friends of A. Doe, a minor ("Plaintiffs") filed a response, (Doc. No. 13), and BCM filed a reply brief (Doc. No. 14). After close consideration of the pleadings and relevant legal standards, the Court hereby **GRANTS-IN-PART** and **DENIES-IN-PART** BCM's Motion to Dismiss (Doc. No. 9).

### I. Factual Background

This case arises from the alleged political distribution of confidential medical information related to gender-affirming care for a minor. In the First Amended Complaint,[1] the Plaintiffs allege that Dr. Eithan Haim ("Dr. Haim"), a resident medical doctor at Baylor College of Medicine ("BCM"), used his credentials to "illegally obtain[] copies of multiple transgender children's confidential health information" from Texas Children's Hospital ("TCH") and to publish that information online for political attention. (Doc. No. 8 at 3). These documents were allegedly published on a political blog and

---

[1] The Plaintiffs initially filed their Original Petition in Texas state court. *See* (Doc. No. 1). After BCM removed the case to this Court, BCM filed a Motion to Dismiss. (Doc. No. 6). Shortly thereafter, the Plaintiffs filed their First Amended Complaint. (Doc. No. 8). Though the Plaintiffs did not seek leave of the Court to do so, the Court hereby grants leave for the First Amended Complaint to be filed. Accordingly, BCM's Motion to Dismiss the Original Petition (Doc. No. 6) is denied as moot.

"include[d] patient names, ages, diagnoses, treatments, appointment dates and exact times, referring physician, procedure details, and even room numbers." (*Id.* at 5). The blog purportedly "linked these patient records in publications on multiple websites, across multiple social media platforms, and even sent links to email subscribers," reaching over eight million people. (*Id.*). According to the Plaintiffs, any "sufficiently interested person could determine the identities of the patients or their parents" from the documents posted online. (*Id.*).

The Plaintiffs allege that at the time of the leak, Dr. Haim was a resident medical doctor in the BCM General Surgery Residency Program. (*Id.* at 6). Throughout the course of the residency program, Dr. Haim was allegedly employed on "rotations" through various Houston medical facilities, including TCH. (*Id.*). During these rotations at the different medical facilities, Dr. Haim, in his capacity as a BCM resident, allegedly had access to the facility and treated patients. (*Id.*). Nevertheless, at the time Dr. Haim allegedly accessed and distributed this medical information to several journalists, "he was no longer working at TCH," or, in other words, was no longer on his rotation at TCH through his residency program. (*Id.*). About one month before the documents were published online, Dr. Haim allegedly "emailed the TCH administrator to request that his login credentials be restored," and shortly thereafter, "his login activity indicated that he had accessed pediatric patient files." (*Id.*).

While the Plaintiffs acknowledge that Dr. Haim "never had a treating relationship with A. Doe," *see* (*id.* at 6), the Plaintiffs allege that BCM owed a duty to the Plaintiffs to protect confidential medical information and "knew or should have known that Dr. Haim posed a serious risk to the privacy of transgender and gender dysphoria patients." (*Id.* at 7). Relying on information alleged in the federal indictment[2] against Dr. Haim and various of his public statements, the Plaintiffs allege that Dr. Haim's "crusade against gender-affirming care" was "widely discussed by him with colleagues and other BCM

---

[2] The Department of Justice has since dismissed the Superseding Indictment against Dr. Haim. *See United States of America v. Ethan David Haim*, Case No. 4:24-CR-00298 (Doc. No. 147).

employees," and he was outspoken about his "whistleblowing" attempt to reveal the gender-affirming operations at TCH. (*Id.* at 7–8). Additionally, the Plaintiffs allege BCM should have prevented this breach of medical information because Dr. Haim reportedly "made one or more failed attempts to access transgender children's patient records from TCH using his BCM credentials . . . before finally succeeding." (*Id.* at 8).

The Plaintiffs allege that the leak of sensitive medical information related to A. Doe's gender-affirming care has caused them "increased anxiety, depression, and insomnia." (*Id.* at 10). Additionally, the Plaintiffs allegedly "scrambled to sell their home, find new jobs, and find a new place to live while living in fear of harassment or violence from hostile actors who have an unknown amount of private information about their family." (*Id.* at 10–11).

The Plaintiffs brought this lawsuit against BCM in Harris County, Texas state court. (Doc. No. 1). BCM timely removed the case to this Court on the basis of diversity jurisdiction. (*Id.*). The Plaintiffs brought six separate causes of action against BCM for (1) the unauthorized release of confidential information under § 159.009 of the Texas Occupations Code, (2) negligent hiring, (3) negligent retention, (4) negligent supervision and enforcement, (5) public disclosure of private facts, and (6) professional negligence. (Doc. No. 8). BCM filed a Motion to Dismiss each of the claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 9). The Court addresses the Motion below.

## II.    Legal Standards

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

3

possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## III.    Analysis

BCM requests this Court to dismiss each of the six causes of action: (1) the unauthorized release of confidential information under § 159.009 of the Texas Occupations Code, (2) negligent hiring, (3) negligent retention, (4) negligent supervision and enforcement, (5) public disclosure of private facts, and (6) professional negligence. Generally, BCM argues that the Plaintiffs failed to sufficiently allege that BCM is vicariously liable for the actions of Dr. Haim. Additionally, BCM contends that the Plaintiffs failed to allege sufficient facts to state a claim for any of the six causes of action. The Court addresses these arguments below.

### A.  Vicarious Liability

The Plaintiffs have asserted the theory of vicarious liability to support their claims for (1) the unauthorized release of confidential information under § 159.009 of the Texas Occupations Code, (2) public disclosure of private facts, and (3) professional negligence. While not contesting that Dr. Haim was an employee, BCM contends that the Plaintiffs failed to sufficiently allege that BCM is vicariously liable for his actions because he was not operating within the course and scope of his residency.

It is undisputed that Texas law applies to this case. (Doc. Nos. 9, 13). "The general rule is that an employer is liable for its employee's tort only when the tortious act falls within the scope of the

4

employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). "The employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007). Accordingly, "if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Minyard*, 80 S.W.2d at 577. The Supreme Court of Texas has explained that "[t]he course-and-scope inquiry . . . involves an objective analysis, hinging on whether the employee was performing the tasks generally assigned to him in furtherance of the employer's business." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 138–39 (Tex. 2018).

BCM argues that Dr. Haim was not operating within the course and scope of his alleged employment as a resident medical doctor when he accessed confidential medical information and distributed that information online. The Court agrees. In this case, while it is undisputed that Dr. Haim was a resident doctor at BCM at the time of the data leak,[3] there are no factual allegations to support that Dr. Haim was acting in "furtherance of the employer's business" or "for the accomplishment of the object for which the [he] was hired" when he allegedly distributed the medical information to a political website. *Minyard*, 80 S.W.2d at 577.

First, the Plaintiffs admit that Dr. Haim was no longer on his BCM rotation at TCH when he reached out to the TCH administration for reinstatement of his access to medical files. *See* (Doc. No. 8 at 7). It follows that, according to the factual allegations in the Complaint, Dr. Haim no longer had any official business at TCH through his residency program with BCM. While Dr. Haim may have

---

[3] The Court notes that while BCM does not concede that Dr. Haim was an "employee" at the time of the incident, BCM does not dispute this allegation in its Motion to Dismiss. BCM limits its argument to the "course and scope" of "his residency." (Doc. No. 9 at 15). The Court need not address whether Dr. Haim was an "employee" of BCM for the purpose of establishing vicarious liability because it finds that the Plaintiffs failed to allege that he was operating within the course and scope of his residency.

used his BCM credentials or affiliation to gain access to the TCH files, the use of his credentials alone is insufficient to establish that he was operating within the course and scope of his residency. *See Larson v. Hyperion Int'l Techs., L.L.C.*, 494 F. App'x 493, 496 (5th Cir. 2012) (holding that the mere use of an employer's technology to commit a tort was insufficient to establish vicarious liability).

Second, the Plaintiffs provide no factual allegations to sufficiently plead that Dr. Haim's actions were in any way, shape, or form in the related to his work with the residency program or in "furtherance" of the BCM business. Not only are the Complaint and the Response to the Motion to Dismiss completely barren of any explanation, but common sense confirms that the alleged misappropriation of private medical information to a political blog is certainly not in furtherance of the business of any medical school. On the whole, the face of the Complaint alleges that Dr. Haim deviated from his professional duties in his residency program to allegedly distribute private medical information for political gain or a "whistleblowing" attempt to reveal the gender-affirming care offered at TCH.

Although the Complaint asserts in a conclusory fashion that Dr. Haim was operating within the "course and scope" of his alleged employment with BCM, the Complaint does not include specific factual allegations to support that contention. The Court cannot accept the conclusory allegations to establish vicarious liability. *Max-George v. Myrick*, No. 21-20281, 2023 WL 4501872, at *2 (5th Cir. 2023) ("Mere conclusory allegations are insufficient to survive a motion to dismiss."). Without specific factual allegations that plausibly set out that Dr. Haim was operating within the course and scope of his residency, the Court finds that the Plaintiffs failed to state a claim under the theory of vicarious liability. Accordingly, the claims for (1) the unauthorized release of confidential information under § 159.009 of the Texas Occupations Code, (2) public disclosure of private facts, and (3) professional negligence are **DISMISSED.**

6

## B.  The Remaining Claims

Finding that the Plaintiffs failed to state the vicarious liability claims, the Court must assess the remaining three causes of action for negligent hiring, negligent retention, and negligent supervision and enforcement. BCM argues that the Plaintiffs have failed to allege that it owed a legal duty to the Plaintiffs because the injury was unforeseeable. BCM also contends that the Plaintiffs otherwise failed to state a claim for these three causes of action under Federal Rule of Civil Procedure 12(b)(6).

### 1.  Duty

BCM argues that these tort claims must be dismissed because the Plaintiffs have failed to establish the existence of a legal duty because "the purported facts fail to show that either A. Doe's alleged injury might have reasonably been anticipated by BCM or that A. Doe was situated such that her injury might reasonably have been foreseen." (Doc. No. 9 at 11). The Supreme Court of Texas has recognized that "[b]efore imposing a duty of care . . . the risk of harm must be foreseeable" because a person has "neither a legal nor moral obligation to guard against that which cannot be foreseen." *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 36 (Tex. 2002) (quoting *Houston Lighting & Power Co. v. Brooks*, 336 S.W.2d 603, 606 (Tex. 1960)).

BCM contends the Plaintiffs failed to sufficiently allege the foreseeability of the injury, and therefore, the existence of a legal duty. In response, the Plaintiffs argue that while they will "require discovery to know the specific conversations, communications, or red flags that may have come to BCM's knowledge," the factual allegations in the Complaint sufficiently establish that BCM should have reasonably anticipated the risk of the dissemination of private medical information related to gender-affirming care. Specifically, the Complaint alleges that "BCM knew or should have known that Dr. Haim posed a serious risk to the privacy of transgender and gender dysphoria patients because Dr. Haim was outspoken in his opposition to gender-affirming care and outspoken about his attempt to whistleblow on the operations at TCH. *See* (Doc. No. 8 at 8). Further, the Complaint states that "Dr. Haim's recent public statements" indicate that he "work[ed] for more than five months, beginning in

Fall 2022, to obtain and release the private information." (*Id.*). Additionally, the Plaintiffs allege that "based on documents from his prior criminal indictment, Dr. Haim made one or more failed attempts to access" the records using his BCM credentials and "worked with one or more other individuals employed by BCM and/or TCH to gain access to the records. (*Id.* at 8–9).

The Plaintiffs argue that these factual allegations sufficiently plead "enough facts to state a claim to relief that is plausible on its face" and sufficiently allege the existence of a legal duty. *Twombly*, 550 U.S. at 570. The Court agrees. Accepting the well-pleaded factual allegations in the Complaint as true, the Court finds that the Complaint sufficiently alleges that BCM owed legal duty to the Plaintiffs.

### 2. Negligent Hiring

BCM contends that the Plaintiffs failed to state a negligent hiring claim. "To prevail on a negligent hiring claim, a plaintiff must establish that 'an employer knew or should have known through the exercise of reasonable care that an employee was incompetent or unfit and that [his] hiring or retention would thereby create an unreasonable risk of harm to others." *Collins v. Walgreen Co.*, No. 4:23-CV-02470, 2024 WL 385697, at *1 (S.D. Tex. 2024). "[A] plaintiff must demonstrate that there is 'something in the employee's background that would cause a reasonable employer not to hire or retain the employee.'" *See Goldfarb v. Elite Serv. Recovery & Towing, LLC*, 2018 WL 4677817, at *2 (E.D. Tex. Aug. 17, 2018) (quoting *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.)). Further, the "[n]egligence in hiring requires that the employer's 'failure to investigate, screen, or supervise its [hires] proximately caused the injuries the plaintiffs allege." *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006).

The Complaint alleges that "BCM has a duty to adequately and thoroughly investigate candidates for its residency program before hiring them" and that BCM failed to "adequately and thoroughly investigate its resident, Dr. Haim, before hiring him." (Doc. No. 8 at 9). Further, the Complaint states that "[t]his failure led to Dr. Haim having access to the private medical information

8

of a category of patients he had been openly antagonistic towards." (*Id.*). BCM argues that these factual allegations are insufficient to state a negligent hiring claim because the Plaintiffs fail to allege any facts that BCM could have discovered that would have revealed Dr. Haim to be unfit for the position or an incompetent medical resident at the time he was hired. *See Goldfarb*, 2018 WL 4677817, at *2. The Court finds that the allegation that Dr. Haim was "antagonistic" towards a "category of patients" does give rise to a plausible negligent hiring claim. This claim is dismissed under Federal Rule of Civil Procedure 12(b)(6).

### 3. Negligent Retention

BCM also argues that the Plaintiffs failed to state a claim for negligent retention. "The basis of responsibility under the doctrine of negligent retention is the master's negligence in retaining his employ an incompetent servant whom the master knows, or by exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *Hernandez v. Ventura Sys LLC*, 3:23-CV-2244, 2024 WL 583500, at *6 (N.D. Tex. Feb. 13, 2024). "The negligent retention theory is similar to negligent hiring except that a plaintiff must show the employer knew or reasonably should have known information about an employee that made them unfit and warranted firing." *Thompson v. Wal-Mart Stores Tex., LLC*, 706 F.Supp.3d 689, 699 (S.D. Tex. 2023).

In addition to the factual allegations mentioned above, the Complaint also includes factual allegations that after BCM hired Dr. Haim as a resident, Dr. Haim continued to be outspoken about his alleged "hostility" and "crusade" on gender-affirming care with his colleagues and other BCM employees. (Doc. No. 8 at 8). Additionally, the Complaint alleges that Dr. Haim admitted in public statements that he had been working on obtaining the medical files for "more than five months" for publication and had "one or more failed attempts to access transgender children's patient records from TCH using his BCM credentials." (*Id.*). Based on those factual allegations, the Plaintiffs allege that BCM "failed to detect the unauthorized access and misappropriation" and "failed to take appropriate action—such as dismissing the resident from the general surgery program or at least limiting his access

9

to records he had no proper purpose in accessing—when it learned of his intentions and prior attempts." (*Id.* at 9). While BCM argues that these factual allegations are insufficient to state a negligent retention claim, the Court finds that these allegations "allow[] the [C]ourt to draw the reasonable inference that [BCM] is liable" for negligent retention. *Iqbal*, 556 U.S. at 663.

### 4. Negligent Supervision and Enforcement

BCM also argues that the Plaintiffs failed to state a claim for negligent supervision and enforcement. To survive a motion to dismiss a negligent supervision claim, a plaintiff must allege sufficient facts to state that (1) "the defendant owed [the plaintiff] a legal duty to supervise its employees," (2) "the employer breached the duty," and (3) "the breach proximately caused the plaintiff's injuries." *Cobos v. Bluefin Water Sols., LLC*, No. 21-CV-00072, 2022 WL 847235 at *9 (W.D. Tex. Mar. 22, 2022), *report and recommendation adopted*, 2022 WL 2720854 (W.D. Tex. Apr. 6, 2022). Both parties solely briefed the negligent supervision claim—not the alleged "negligent enforcement." The Court interprets this last claim as a negligent supervision claim.

For the same reasons explained above, the Court finds that the Complaint states a claim for negligent supervision. Not only does the Complaint allege that Dr. Haim was outspoken about his animosity for gender-affirming care and his whistleblowing plans to expose the operations at TCH, but the Complaint also alleges that Dr. Haim had made several previous attempts to improperly access and distribute confidential medical information using his BCM credentials. *See* (Doc. No. 8 at 8–10). The Court finds that these allegations "allow[] the [C]ourt to draw the reasonable inference that [BCM] is liable" for negligent retention. *Iqbal*, 556 U.S. at 663.

### 5. Damages

Lastly, BCM argues that the alleged damages are "conclusory in nature and offer no specific support" and do not "draw any causal link between their alleged damages and BCM." (Doc. No. 9 at 25). The Court disagrees. The Complaint alleges that the release of the confidential medical information caused the Plaintiffs to experience "increased anxiety, depression, and insomnia." (Doc.

No. 8 at 10). Additionally, the Complaint alleges that the Plaintiffs "scrambled to sell their home, find new jobs, and find a new place to live while living in fear of harassment or violence from hostile actors who have an unknown amount of private information about their family." (*Id.* at 10–11). The Court notes that "[a]t the pleading stage, each subset of damage does not need to be pled with specificity or directly supported with evidence." *Luke v. Lee County*, 1:20-CV-388, 2023 WL 6141594, at *2 (W.D. Tex. Sep. 20, 2023). The Court finds that the Plaintiffs included factual allegations sufficient to support their claim for damages. A more detailed picture of the alleged damages can be gained through the discovery process.

## IV.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS-IN-PART** and **DENIES-IN-PART** BCM's Motion to Dismiss (Doc. No. 9). The Plaintiffs' claims for the unauthorized release of confidential information under § 159.009 of the Texas Occupations Code, public disclosure of private facts, professional negligence, and negligent hiring are dismissed with prejudice. The negligent retention and negligent supervision claims remain live.

It is so ordered.

Signed on this the ____ day of March 2026.

_____
Andrew S. Hanen
United States District Judge

11